Good morning. May it please the court, I'm Donald Kilmer. I'm representing the appellants Teixeira and the gun store owners. The district court's order granting this motion to dismiss under Rule 12 was wrong on the date it was filed, but what makes it easy for this court to dispose of this case is that there were subsequent decisions, Chauvin and Jackson, in this circuit which mandated a reversal. However, as it was decided in September of 2013, the district court gave a very cramped and narrow reading of the Heller and McDonald decision. It came to the conclusion that the right is only a right that protects the right to keep and bear arms in the home only. The district court erroneously concluded that the Second Amendment does not extend outside of the home. The order bootstrapped the presumptively lawful dicta without giving it a proper reading that the Supreme Court wants, and furthermore, the district court conflated conditions and qualifications on commercial sales. The problem is, make no mistake, use zoning or redlining, as what this case is about, is prohibitory. It is not regulatory. What do you mean by that, it's prohibitory? Well, the 500-foot rule, Your Honor, ends up being, as was pled in the a situation where it's impossible to open a gun store, a new gun store, in Alameda County and unincorporated areas. Okay, but there are gun stores in Alameda County. There are currently existing gun stores in Alameda County. The problem is, is that as those stores either, by attrition, go out of business, or they seek to expand themselves, they're not going to be able to stay in business. And my clients also offer unique services. Well, maybe it's not ripe yet, but as I understand it, there are gun stores and nobody is claiming you can't buy a gun in Alameda County. Your Honor, the alternative, the idea that the rights aren't violated because there are alternative means of exercising the right, is something that we don't. Well, whose right are you talking about? Both, my client's right to open a gun store and the rights that they are asserting under Craig v. Boren for their customers and the people who may want to use their services. What case says that a store has the right, people have the right to open gun stores? There isn't one that says people have the right to open gun stores. I would extend the analysis in other Supreme Court cases that a gun store owner can assert the rights of his customers and his patrons when their fundamental rights are asserted. The Craig v. Boren case dealt, for instance, with service of alcohol to, and there were distinctions made, and it was primarily an equal protection case. But the analysis is the same when we're talking about a fundamental right. But counsel, let me ask you something. Your second amendment, the right to sell guns, is especially protected by an enumerated right in the Bill of Rights, right? Yes, Your Honor. The First Amendment protects freedom of the press. Freedom of the press. Do you think that zoning regulations would apply to a newspaper? Certainly, if the zoning is meant to regulate the newspaper as some sort of industry or some sort of commercial enterprise. We don't want a printing press within 500 feet of a house because it makes noise. Well, if there were facts to back that up, Your Honor, then we'd be in a different position. This case is here on a Rule 12 motion. There are no facts that the county has produced or that have been, that are in this record that says gun stores, that this 500-foot rule somehow makes gun stores either safer or not. So that would be a rational review test, right? It might be, but, Your Honor, there has to be evidence. But, no, our position is that it would be What I'm after is this. In a First Amendment situation where there were a printing press, right, would that, would the right of the printing press to print pamphlets, would that be subject to rational review, or would it be subject to an immediate review or strict scrutiny? At least intermediate, Your Honor, if there were no facts to demonstrate that the printing press was causing a particular problem. In this case, there are no facts that gun stores are a particular source of any problem. There's no primary analysis. There's no secondary analysis in this case. Well, then you don't need intermediate scrutiny, do you? Well, our position is that the 500-foot rule, which is the only law that we're challenging here, we're prepared to abide by all the other restrictions that Alameda, the State and the Federal Government are imposing upon gun stores. The problem is the 500-foot rule ends up being I take your argument to be that there is no rational basis for thinking that a gun store affects the public health and safety in any way. Yes, Your Honor. We would make the argument that it doesn't pass rational basis review either. Well, yes. But the standard here is at least intermediate if it's an ancillary right. Gun stores occupy the exact same position to the Second Amendment that bookstores do to the First Amendment. Counsel, here we have a 12b-6 decision. That's correct, Your Honor. There was no evidence taken, obviously. So it seems to me what you're asking for is a remand so that the county can be put to the test of supporting the rational basis or at least the rational basis for the 500-foot rule. Is that right? Well, I'd be asking for more than that, Your Honor. I'd ask for a remand with instructions that the test in the Ninth Circuit now under Chauvin is a two-part analysis. First of all, is the Second Amendment impacted? In this case, we believe it is for the reasons I stated earlier, for the same reason that bookstores would be impacted by a 500-foot rule. Once we find that there is an impact, we have to look as to whether or not what were the rules in place when the Second Amendment was ratified in 1791 or in 1864 when the Fourteenth Amendment was ratified. If the government can't produce anything to substantiate that, yes, the burden is on them under an intermediate scrutiny analysis to say, you know, these new rules or there's something new or newfangled about gun stores that compel a finding that a 500-foot rule will work here. So I'd be asking for the court to remand, but also provide us with instructions on what kind of evidence, what quality of evidence, and what would be the evidentiary rules for the county to have to prove. It's clearly their burden once a Second Amendment right is established. Is there any reason why you can't open a gun store in the incorporated area? The incorporated areas are governed by the cities, Your Honor, and the clients made a business decision to open an Alameda unincorporated area. I can understand that. The land's cheaper. Fine. Okay. The lease is cheaper. But is that the burden you're proffering, that it's an economic cost? Well, the particular location of this gun store, or the proposed gun store, it used to be a paint store. There's a tire store across the street. It's already in a commercial retail district. The clients chose the site because of its unique characteristic to help service their clients. They're not a big five, big box gun store. They also provide hunter safety courses. They also provide gunsmithing services. So they really do want to serve the local community. And in fact, the Planning Commission Board, in its initial finding granting us the variance initially, said that these services are necessary, and that there appears to be a demand for this. And then they came to the conclusion that the only thing that this store violates is the 500-foot rule. Well, we still haven't got to a factual analysis, because we're here on a 12b6 motion, as to whether or not they even measured the 500 foot properly. But beyond that, the 500-foot rule itself is irrational, because what's disqualifying this particular site is a residence. And what's incongruent in the district court decision is this finding that residential areas are somehow sensitive places. The problem is, is that earlier in the district court decision, there's a finding that the only place you can have a gun is in your home. So the district court decision doesn't make sense on its face, and it should be remanded with instructions from this court about how to ensure that the rule essentially was within the category that was identified in Heller, rational rules for sensitive places. What's your comment on that? Well, except that residential areas can't be sensitive places by definition, because the city has no, or the county has no interest in regulating the possession of guns in houses. That's the one place where there's absolutely a core right, and where actually strict scrutiny would apply. I want to make sure I'm clear. Your clients are not claiming the right to bear arms. Your clients are claiming a constitutional right to sell arms. They're claiming the constitutional right to act like the Second Amendment analog of a bookstore owner. Yes, Your Honor. To provide books. Fair enough. There's not a case in the United States that supports the right of gun sellers to assert that right, is there? Maybe this case will be the first. Maybe it won't. Maybe it will. But there isn't anything right now, right? Well, Your Honor, directly on point to open a gun store, no. There are cases in other circuits. For example, the Yazelle cases in Chicago in the Seventh Circuit. They're dealing with opening ranges. An in that case, the range case, there was a total ban on ranges, right? That's correct, Your Honor. We don't have a total ban in Alameda County. We have a, we have, what we have alleged is that the 500-foot rule is a de facto ban on unincorporated areas, in populated areas. You're telling us there are other gun stores in the unincorporated Alameda County. No, there are gun stores in the other areas, Your Honor. So other than the Yazelle case, what's your, what's your next best case? My next best case is to take a look at First Amendment cases, Your Honor. Look at adult bookstores and look at the, the way courts have approached that. They, the courts in the adult bookstore cases require a secondary, a secondary effects analysis with facts that are adjudicated in a district court, which is the proper place to adjudicate them. I see I have four minutes left. I'd like to reserve those for rebuttal. Thanks. May do so, counsel. Thank you. We'll hear from the Good morning, Your Honor. Scott Fidele on behalf of the County of Alameda. This case is about a sensible, minimally restrictive gun ordinance. These types of ordinances have routinely been held by the Supreme Court and this Court. Plaintiffs, however, slow down, counsel. Sure, certainly. Plaintiffs' prospective gun owners contend that the ordinance impinges on their customers and their own Second and Fourteenth Amendment rights. But in reality, the only interest affected here is plaintiffs' desire to open a gun store in a particular location. And because that interest is wholly unprotected by the Constitution, the district court's decision should be affirmed. This is so for two reasons. First, the ordinance does not burden conduct protected by the Second Amendment. And even if it does, it easily passes intermediate scrutiny. Second, plaintiffs have alleged, have not alleged any facts showing that gun stores are similarly situated to other commercial businesses. And even if they are, that the alleged disparate treatment was intentional and that the county lacked a rational basis for doing so. Did the district court do an analysis of the rational basis? Yes, Your Honor. The district court actually did. How can he do it on the basis of a 12b-6? Well, the district court did an intermediate scrutiny analysis. No, no. Did the district court take any evidence from the county or from the other side to examine whether the ordinance meets the rational basis test? The district court did not take any evidence. That's correct, Your Honor. But I submitted need not to. And I asked the court to look at the Hall v. Garcia case, which was a district court case in the Northern District, which was decided on a motion for judgment on the pleadings. It's a gun case out of San Francisco County involving a 1,000-foot buffer zone for possessing guns in a school zone. And the court there found that there was no need for an evidentiary analysis, that the stated interest by the city to protect the safety of minors was enough. And it's cited a Supreme Court case, New York v. Ferber. And in that case, it was a New York ordinance prohibiting the sale of pornography, child pornography. And the Supreme Court held that the state didn't need to have to come up with evidence showing child pornography is harmful to minors and to the public. The state's enough to pass scrutiny. And I think the same holds true here. It's self-evident that, you know, a gun store near a residential zone creates public safety concerns. And I think that this is a very minimally stringent ordinance. It's just a 500-foot ban around residents, other sensitive places such as schools. I'm having trouble following you, counsel. Let me ask you, what is the danger to residents in having a gun store in a residential area? Well, I think there's a couple of things. There's, you know, there's harmful secondary effects of gun stores. Pardon me. Judge O'Scannlon brought out the fact that there's no evidence introduced here. So it all has to be based on a rational review basis of conceiving of possible problems, right? Well, I think that those problems can be conceived. I think that... And how can you conceive a danger to people because of a gun store? Well, I mean, if you look at, there's actually a case in the California Court of Appeal called Sutter v. City of Lafayette, where the court found that gun stores create harmful secondary effects, that people who are convicted felons, et cetera, even though they can't possess a gun, may attempt to do so, may attempt to enter a gun store. And there's also the issue of aesthetic appearance. Was that based on evidence that convicted felons were buying guns at gun stores? I don't believe that there was any evidence in that case of that occurring. Is there any case in which there is evidence to support that theory? Well, there is discussion of that, and I don't know if I recall... I was asking about evidence, not discussion. I believe that there is an Illinois Association case, a district court case, that there was a discussion where the city of Chicago actually put forth some evidence showing that there was some harmful effects related to the locations of gun stores. And also, there was talk in that case about straw purchasers, where individuals who are lawfully allowed to possess a gun can go and buy it for a convicted felon or someone of that nature. And there is some evidence that Chicago put forth about that in that case. So the secondary evidence that we conceive of as a rational basis upon which to limit the sale of guns is the idea that convicted felons may attempt to buy guns at gun stores, or that proxies will buy guns for convicted felons because convicted felons cannot pass a background check, or both. Both. Both. Both. The convicted felons may attempt to buy them, or they may have a person buy them as a proxy. And that conception is based on a Chicago study? There is. There is. In the cases, I can cite it for the record. Just bear with me one second. I mean, some judges thought about that? Is that the idea? No, it's the Illinois Association of Firearm Dealers. It's 961 F. Supp. 2nd, 928. In that case, there's some discussion where Chicago puts forth reasons for a gun order. It's a district court case? It's a district court case, yes. And that's all your, the best of your research has shown? Well, we also have, of course, you know, and this court recognized public safety being a government, important government interest in the Jackson case. That's a gun ordinance case out of San Francisco, where there was a requirement to have your gun in a lockbox when in your home, if not on your person. There's also this court's decision in the Fody case. In the Jackson case, as I remember it, the regulation was found invalid, right? No, that's not correct, Your Honor. In Jackson, the regulation was upheld. And it was actually just the plaintiff sought certiorari, and the Supreme Court denied that, so that decision stands. The analysis in Jackson would support the notion that to test the rationality of the regulation, there must be some examination, some tender of evidence to support it, no? Well, I think, Your Honor, there would be no way for— Well, one could go through the process, have an evidentiary hearing, and reach a reasonable conclusion that the regulation does have a valid purpose, and therefore, the gun store would not be permitted in that particular location. Well, I— What really bothers me is that this is all — this entire case is on conjecture. I think we don't even need to get there, Your Honor. And the reason being, in Jackson, you have a case where you weren't dealing with a presumptively lawful regulation. You were dealing with one that had not been noted by the Supreme Court in Heller, so they went to the secondary analysis, which was the intermediate scrutiny. Here you're dealing with one that Heller specifically identifies, saying, you know, that there's no question that the law's imposing conditions on the qualifications and sales of firearms are presumptively lawful. That's what we have. That's exactly what we have here. So we don't — as shown in Jackson, we don't even need to get there. We can say, this is, you know, allowable under Heller, and stop there. The analysis is done. That's certainly the decision, or at least the conclusion Judge Oreck made. But what troubles me is that it seems to conclude that any restriction on the sale is presumptively lawful. Where does that come from? That's not in Heller. Well, it's not in Heller, but there are a number of cases that recognize Heller as — the court in Jackson, which used the word outside the scope, this court in Voxnay, which said — used the word disqualifications from the Second Amendment. So there's — and both the Fifth Circuit and the NRA case said something similar outside the ambit, I believe. There's their language. If you see these on that list, it's presumed that these are not something that needs to be discussed in the Second Amendment context. If we were to remand this case for an evidentiary hearing, what would the county's position be in light of the conclusions already reached by the Board of Supervisors or the Planning Committee, whatever it was, that the store did qualify? What additional evidence would you be marshalling to support the validity of the 500-foot rule? Well, I think there's evidence in the record already which kind of shows why the variance was denied here. If you look in the exertion record, there's a bunch of concerns from community groups, you know, about the proximity of the gun store to it, like, for example, a Hell's Angels headquarters, concerns about preserving the neighborhood and protecting residents. The Planning Department expressed concerns about a residential neighborhood being easily accessible. So there is that evidence already there that the court can look at in this instance. Evidence in a motion to dismiss under Rule 12b-6? That's a new one on me. Well, the evidence was actually attached to the plaintiff's complaint, so it could be considered under the United States v. Ritchie case, which whenever you have evidence attached to a complaint, it can be considered in the context of a motion to dismiss. And so the district court rightfully did consider that evidence in determining, you know, and it supports the theory that there are harmful secondary effects to gun stores and concerns about the residential character of the neighborhood. Let me ask you this. I was asking Mr. Kilmer about who the plaintiff is here. We don't have any plaintiff who says, I want to bear arms. What we have are plaintiffs who say they want to sell arms. So I asked Mr. Kilmer, how do you get from being a seller to assert the Second Amendment right to bear arms, and he says they stand in the same position as porn shops. What's your answer to that? Well, I don't necessarily agree with my colleague in that one. I think that, you know, the Craig v. Boren case, which is the case they're kind of relying on, dealt with a situation where there was a plaintiff who actually was affected. It dealt with a law prohibiting sale of alcohol to male minors under 21, between 21 and 18. And that plaintiff reached the age of maturity and he dropped off, but the Supreme Court held that, you know, the business could still represent his interest. I don't think we really have that here. We never had a plaintiff come forward who actually tried to, you know, had an inconvenience or an inability to purchase a gun in Alameda County. So I don't think that that's necessarily analogous here. And there's certainly a lot of cases which hold that there is no Second Amendment right to sell arms. Which cases say that? Well, for example, U.S. v. Chafin is a Fourth Circuit case which found no authority for the Second Amendment that has been historically understood to be the right to sell arms. Give us the site again. U.S. v. what? Chafin. It's C-H-I-F-N. It's an unpublished decision out of the Fourth Circuit. Now, was that referred to in your brief? It was. It was, Your Honor. And I can cite it for you. It's F-20-423, Fed Appendix 342, Penn Site 344. Also cited in our brief was an unpublished district court decision out of Montana which states, and I quote, Heller says nothing about extending the Second Amendment protection to firearms dealers. And what case is that? That's the Montana Shooting Sports Association v. Holder. And that's 210 Westlaw 392-6029. So there is case law. Just stop there for a second. I'm looking at the county's brief, if I'm not mistaken, submitted by County Counsel Donna Ziegler, Mary Ellen Gormley. Is that your brief? That's our brief, Your Honor. I can't find the Montana case. Where is it listed? I'm nearly certain it's in our brief, or at least in our... Is the name of the case Montana v. something? Yes. And if it wasn't mentioned in our brief, it definitely was mentioned by the district court in its opinion. I know that for certain. Both those cases. You just told us, you mentioned it in your brief, and I'm trying to find it. Help me find it. What page of your brief is it referred to? Well, let me grab it for you, Your Honor, and I'll let you know. I'm looking at Roman 3, which is part of the listing, and under M, I don't see anything that says Montana. Presumably, it would be in alphabetical order. I do concede. I do not see that in our table of authorities. I do submit, however, it is in the district court's decision, the underlying decision, which is part of the excerpts of record. Both those cases were cited in support. Now, you also mentioned another case, which I couldn't find either, Craig v. Boren. Did I have that correct? I believe that's cited in the plaintiff's brief, yes, as grounds for standing, for their association standing. In plaintiff's brief. It's not in your brief. Correct. But you're relying on a plaintiff's case? Well, I'm just rebutting their argument that they have standing, and that's why I bring up that case, because the plaintiff's counsel mentioned that in his oral argument here. One thing I would like to hit on, I know I'm running out of time, is that the equal protection argument clearly doesn't stand here. You know, plaintiff has to show that defendants intentionally treated him differently than other similar-situated businesses without a rational basis. You know, there's no intentional distreatment, and we've noted in our briefing they have in theirs that there's, you know, a superstore, for example, has to get a conditional use permit. There's no difference in treatment from similarly-situated businesses. They're not similarly-situated to other commercial retailers, as shown by how heavily regulated they are by both federal and state authorities. And, of course, there's a rational basis here. Gun stores do present dangers, which, as the Court held in the Hall case, that there are some secondary effects and public safety concerns surrounding guns. So, unless the Court has any further questions, I'll submit. No further questions. Thank you, Counsel. Mr. Kilmer, you have some reserve time? I do, Your Honor. Thank you. Would you please address the point that this regulation is presumptively valid under Heller? The Heller dicta, Your Honor, talks about long-standing, presumptively valid, if I'm remembering correctly, long-standing, presumptively valid regulations with regard to the commercial sale of firearms. The commercial sale of firearms and the private sale of firearms in California, I would note, are all heavily regulated under state law. It's possible to buy and sell firearms on the streets in Oakland, on the streets in unincorporated Alameda County, as long as you comply with California law, which is both people have to pass a background check, they have to use a licensed dealer to do the transfer, the gun has to be held for 10 days for the buyer to take possession. So, the idea that the county is somehow regulating the sale of firearms is just, it's a smoke screen. The 500-foot rule doesn't do anything to regulate the sale of firearms. The problem is, is the 500, what I heard the county argue here is they were arguing for a complete ban on guns in Alameda County. They were proposing reasons like, oh, the crime rate or danger to schools or gun-free school zones or what the big difference is between guns and books is you do not need a background check to buy a book. You do not have to have your book held for 10 days by the vendor. You can read a book in public without a license. So, the point is, is that guns are already regulated by the state of California, both in their carrying, in their disposition. In fact, they're practically rendered inert objects by California and federal law, unless you're at a range or in the hunting field. The argument that California law preempts the local regulation or that the local regulation doesn't really regulate? We're arguing not for preemption here. We're arguing that commercial sales are already regulated and, therefore, that the county must prove with its rules that it is doing something to address some articulable danger that's not already addressed by another law. The Sutter case, I would note, is a pre-Heller case. We're also happy to file a 28-J letter in this matter at providing the court with a copy of the Illinois Shooting Association v. Chicago case. I believe it was actually favorable to our position in that. The problem is, with the evidence in the record such as it is, is that the only people who objected to this gun store was a housing association across 8 lanes to 12 lanes of the 880 freeway on the other side of the freeway and behind a retaining wall that was, I believe it was 12 feet high. It amounts to a heckler's veto. If you read the objections to this homeowners association, it's, we don't like guns. We don't like people who like guns. We don't That is a particular, that's using a particular animus against people who want to exercise their Second Amendment rights as a reason to deny them what's normally available to other commercially, lawfully available products. Unless the court has any further questions, I have nothing further to provide. Thank you, counsel. The case just argued will be submitted for decision. Thank you.
judges: O'scannlain, Silverman, Bea